# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MANUEL ANGELO SILVA, | Case No.  1:21-cv-01038-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 15, 17, 18) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Anthony Manuel Angelo Silva ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Social Security benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's appeal shall be denied.

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 8, 9, 10.)

## II.

### BACKGROUND[2]

Plaintiff filed the instant application for Social Security benefits under Title II on May 24, 2018, alleging disability beginning December 6, 2017.  (See Admin. Rec. ("AR") 16, 179–85, ECF Nos. 11-1, 11-2.)  Plaintiff's claims were initially denied on August 23, 2018, and denied upon reconsideration on April 26, 2019.  (AR 80–92, 93–107.)  On October 27, 2020, Plaintiff, represented by non-attorney representative Alexander M. Gorski,[3] appeared via telephonic conference, for an administrative hearing before Administrative Law Judge Nancy M. Stewart (the "ALJ").  (AR 48–79.)  Vocational expert ("VE") Jeff Komar also testified at the hearing.  On November 4, 2020, the ALJ issued a decision denying benefits.  (AR 13–32.)  On December 7, 2020, Plaintiff submitted additional medical records, for the period of October 26, 2020 through November 24, 2020, to the Appeals Council for review after his hearing with the ALJ.  (See AR 297–99 (Dec. 7, 2020 representative brief); AR 176–78 (Pl.'s req. for rev. of hearing to Appeals Council); AR 33–47 (supplemental medical records).)  On April 28, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 1–7.)

Plaintiff initiated the instant action in federal court on July 1, 2021, and seeks judicial review of the denial of his applications for benefits.  (ECF No. 1.)  The Commissioner lodged the administrative record on March 18, 2022.  (ECF No. 11.)  On June 6, 2022, Plaintiff filed a motion for summary judgment.  (ECF No. 15.)  On July 13, 2022, Defendant filed a brief in opposition.  (ECF No. 17.)  Plaintiff filed a reply to Defendant's briefing on July 27, 2022.  (ECF No. 18.)  The matter is deemed submitted.

///

///

///

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

[3] Plaintiff is currently represented by attorney Melissa Newel in the instant appeal.  (See ECF No. 15.)

**III.**

**LEGAL STANDARD**

### A.     The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[5] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[5] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only disability benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[6] A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE. See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

---

[6] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1    **B.    Standard of Review**

2    Congress has provided that an individual may obtain judicial review of any final decision

3    of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

4    determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

5    the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

6    Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

7    the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

8    405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

9    evidence which, considering the record as a whole, a reasonable person might accept as adequate

10   to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002)

11   (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also

12   Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to

13   the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is

14   not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a

15   scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v.

16   CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and

17   citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the

18   ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout,

19   454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally

20   falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396,

21   409 (2009).

22   Finally, "a reviewing court must consider the entire record as a whole and may not affirm

23   simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153,

24   1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

25   Nor may the Court affirm the ALJ on a ground upon which she did not rely; rather, the Court may

26   review only the reasons stated by the ALJ in her decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th

27   Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

28   this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

1    for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

2    the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

3    400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

6    The ALJ conducted the five-step disability analysis and made the following findings of

7    fact and conclusions of law as of the date of the decision, December 9, 2020 (AR 18–27):

8    At step one, the ALJ determined Plaintiff meets the insured status requirements of the

9    Social Security Act through June 30, 2023, and Plaintiff has not engaged in substantial gainful

10   activity since December 6, 2017, the alleged onset date.  (AR 18 (citing 20 C.F.R. §§ 404.1571 et

11   seq.).)

12   At step two, the ALJ determined Plaintiff has the following severe impairments:

13   degenerative disc disease of the spine, sleep apnea, and insomnia.  (Id. (citing 20 C.F.R. §

14   404.1520(c)).)

15   At step three, the ALJ determined Plaintiff does not have an impairment or combination of

16   impairments that meets or medically equals the severity of one of the listed impairments in 20

17   C.F.R. Part 404, Subpart P, Appendix 1.  (AR 19–20.)  The ALJ also noted Plaintiff's right

18   nephrectomy, following Plaintiff donating a kidney in 2003, and status post-left knee arthroscopy

19   were deemed to be nonsevere because they do not cause more than a minimal limitation in

20   Plaintiff's ability to perform basic work activities.  (AR 19.)  And the ALJ determined Plaintiff's

21   anxiety disorder does not cause more than a minimal limitation in his ability to perform basic

22   mental work activities and is therefore nonsevere.[7]  (Id.)

23   The ALJ reached the latter determination based on her review of the paragraph B criteria

24

25   [7] The Court notes Plaintiff does not challenge the ALJ's findings with respect to any mental impairments or
     determinations related to his mental impairments, such as the determination that Plaintiff does not meet the paragraph
26   B criteria, or the absence of non-physical limitations in the RFC.  Instead, Plaintiff appears to challenge only the
     ALJ's findings and determinations as related to his degenerative disc disease of the spine impairment.  As such, any
27   challenges regarding the mental RFC are deemed waived and are not further discussed herein.  Lewis, 236 F.3d at
     517 n.13; Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any
     claims that were not actually argued in appellant's opening brief" and will only "review … issues which are argued
28   specifically and distinctly in a party's opening brief.").

6

and the finding that Plaintiff's mental impairments do not result in one extreme limitation or two marked limitations in a broad area of functioning.[8]  (AR 19–20.)  More specifically, the ALJ determined Plaintiff has only a "mild" limitation in the ability to adapt or manage oneself, and "no limitation" in the areas of "understanding, remembering or applying information," "concentrating, persisting, or maintaining pace," and "interacting with others."  (AR 20.)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform:

> **a range of work at the sedentary exertional level as defined in 20 CFR 404.1567(a). Specifically, he is able to lift and carry no more than 10 pounds occasionally and frequently and he can push and pull within those weight limitations. The claimant is able to stand and walk no more than two hours total in an eight-hour workday with no prolonged walking of greater than 20 minutes at a time and he can use a cane if needed. He is able to sit for six hours total in an eight-hour workday and he needs to be able to stand and stretch at least every 30 minutes for one to two minutes. The claimant is unable to kneel, crawl, or climb ladders, ropes, or scaffolds, but he can occasionally perform all other postural activities. In addition, he can have no concentrated exposure to vibration and he is unable to work in hazardous environments, such as working at unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles.**

(AR 21–25 (citing 20 C.F.R. § 404.1529; SSR 16-3p, available at 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (AR 25 (citing 20 C.F.R. § 404.1565).)

At step five, the ALJ noted Plaintiff was born on January 21, 1976, and was 41 years old (which is defined as a younger individual age 18–44) on the alleged disability onset date; Plaintiff

---

[8] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  Id.  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  Id.  An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  Id.  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  Id.  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair."  Id.  And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  Id.

has at least a high school education; and transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferrable job skills.  (AR 26 (citing 20 C.F.R. §§ 404.1563; 404.1564; SSR 82-41, underline available at 1982 WL 31389 (Jan. 1, 1982); 20 C.F.R. Part 404, Subpart P, Appendix 2).)  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as:

- Addresser (Dictionary of Occupational Titles ("DOT") 209.5879010), a sedentary, unskilled work position with a specific vocational preparation ("SVP") level of 2, and approximately 3,002 jobs available in the national economy;

- Document Preparer (DOT 249.587-018), a sedentary, unskilled work position with an SVP level of 2, and approximately 19,044 jobs available in the national economy; and

- Surveillance System Monitor (DOT 379.367-010), a sedentary, unskilled work position with an SVP level of 2, and approximately 8,487 jobs available in the national economy.

(AR 26–27 (citing 20 C.F.R. §§ 404.1569; 404.1569(a); 20 C.F.R. Part 404, Subpart P, Appendix 2; SSR 83-11, available at 1983 WL 31252 (Jan. 1, 1983); SSR 83-12, available at 1983 WL 31253 (Jan. 1, 1983); SSR 83-14, available at 1983 WL 31254 (Jan. 1, 1983); SSR 85-15, available at 1985 WL 56857 (Jan. 1, 1985)).)  With respect to the identified jobs, the ALJ noted the VE's testimony was consistent with the DOT and, with respect to the specified RFC limitations, the VE's testimony was based on his professional experience.  (AR 27.)

Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social Security Act, from December 6, 2017 (alleged date of onset) through November 4, 2020 (date of decision).  (AR 27 (citing 20 C.F.R. § 404.1520(g)).)

**V.**

**DISCUSSION**

Plaintiff asserts three challenges on appeal: (1) the ALJ erred in the evaluation of Plaintiff's symptom testimony; (2) the ALJ erred in the evaluation of Dr. Arikawa's medical opinion; and (3) the Appeals Council erred in not remanding the case for further proceedings

1    considering new material evidence submitted by Plaintiff.  (ECF No. 15 at 2, 25–40.)

2          **A.**      **Evaluation of Plaintiff's Symptom Testimony**

3          Plaintiff testified he had childhood issues with his back, but after he injured his back in

4    December 2017, it never seemed to be the same.  (AR 63–64.)  Around that time, Plaintiff was

5    doing fabrication work at Borrell, which was strenuous work.  (AR 62.)  Plaintiff left Borrell and

6    started his own company due to a divorce and fight for sole custody of his two children at that

7    time; Plaintiff was successful in this litigation.  (AR 63.)  Within three to five months after

8    starting his own business, Plaintiff started having "major illnesses" and significant problems with

9    his spine.  (Id.)  He kept injuring himself while working and noticed it took longer and longer to

10   heal.  (AR 64.)  Plaintiff filed his disability application in May 2018, alleging symptoms from

11   sleep apnea and back injury.  (AR 53, 63.)

12         Plaintiff testified he is in pain both sitting and standing.  (AR 64.)  He favors his right

13   side.  (Id.)  He experiences back pain every day.  (AR 65.)  The pain radiates down his leg on the

14   right side and he has a pressure on the right side of his buttocks and it sometimes goes numb.

15   (Id.)  Plaintiff testified he always has to change positions.  (AR 66.)  Plaintiff testified the pain

16   keeps him up at night (id.), though he also testified the stress and anxiety of lacking the security

17   he needs to pay his mortgage and support his children makes it difficult to sleep (AR 71).

18         Plaintiff testified he has good and bad days with his back, with approximately three or

19   four bad days per week.  (AR 68.)  On a bad day, Plaintiff ices his back, uses his TENS unit,[9]

20   takes pain medication, and lies on the couch all day.  (AR 67–68.)  Plaintiff estimates that he can

21   only stand for ten to twenty minutes "at the most"; he could lift eight to ten pounds at most.  (AR

22   66–67.)  He has a back brace that he uses when he does any kind of chores.  (AR 68.)  He also has

23   a walker that he uses, at times.  (Id.)  Plaintiff testified he cannot bend to load a washer and dryer;

24   he can fold clothes; he can do light dusting that does not require bending or reaching; he can help

25   make a bed.  (AR 69.)  But Plaintiff testified that, after doing such chores, he would need to take

26   one to two days afterwards to recover.  (AR 70–71.)  Plaintiff's girlfriend lives with him and

27         [9] A TENS (transcutaneous electrical nerve stimulation) unit is a method of pain relief involving the use of a mild

28   electrical current delivered to the affected area on the body.  The electrical impulses can reduce the pain signals going to the spinal cord and brain, which may help relieve pain and relax the muscles.

helps him.  (AR 69.)  She has sometimes helped Plaintiff bathe, use the restroom, and get dressed.  (Id.)  Plaintiff's prescribed medications make him feel drowsy.  (AR 70.)

Plaintiff previously had two non-invasive lumbar spine surgical procedures, in December 2018 and November of 2019.  (AR 51–52.)  He notified the ALJ during the hearing that he was scheduled for a lumbar fusion surgery on November 6, 2020, which Plaintiff expects to be his last lumbar surgery.  (Id.)

### 1.   Legal Standard[10]

The ALJ is responsible for determining credibility,[11] resolving conflicts in medical testimony, and resolving ambiguities.  Andrews, 53 F.3d at 1039.  A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").

Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

> If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is

---

[10]   Although Defendant emphasizes disagreement with the "clear and convincing reasons" standard in order to preserve the issue for future appeals, Defendant acknowledges it is the applicable standard for weighing credibility in the Ninth Circuit.  (ECF No. 17 at 7 n.2.)

[11]   SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, at *1-2.

> credible and what testimony undermines the claimant's complaints.
> In this regard, questions of credibility and resolutions of conflicts in
> the testimony are functions solely of the Secretary.

_Valentine v. Astrue_, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); _see also_ _Lambert_, 980 F.3d at 1277.

Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence."  _See_ _Vertigan_, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); _see also_ 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting the testimony.  _See_ _Burch_, 400 F.3d at 680–81; _see also_ _Stobie v. Berryhill_, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period and (2) symptom testimony conflicted with the objective medical evidence).

Nevertheless, the medical evidence "is still a relevant factor in determining the severity of [the] claimant's pain and its disabling effects."  _Burch_, 400 F.3d at 680–81; _Rollins v. Massanari_, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  Indeed, Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard.  _See_ _Hairston v. Saul_, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting _Carmickle v. Comm'r, Soc. Sec. Admin._, 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); _see also_ _Woods v. Comm'r of Soc. Sec. (Woods I)_, No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022)

11

("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be  sufficient." (emphasis in original)).

Additional factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  SSR 16-3p, at *5.

Finally, so long as substantial evidence supports the ALJ's assessment of a claimant's subjective complaint, the Court "will not engage in second-guessing."  Thomas, 278 F.3d at 959.

2.    Analysis

As noted, the ALJ determined Plaintiff has the severe impairments of degrative disc disease of the spine, sleep apnea, and insomnia.  (AR 18.)  As a result, the ALJ was required to make a credibility finding as to Plaintiff's own testimony.  Valentine, 574 F.3d at 693; Lambert, 980 F.3d at 1277.  Because the ALJ made no finding that Plaintiff was malingering, she was required to give clear and convincing reasons as to why she did not find Plaintiff's subjective contentions about his limitations to be persuasive.  Id.

a.    **Inconsistencies with the Medical Record**

One reason provided by the ALJ is that Plaintiff's allegations are inconsistent with the

medical and other evidence.  For example, the ALJ noted Plaintiff alleged it hurts for him to sit in one position with both feet on the ground (AR 25 (citing AR 67)), but that is inconsistent with an August 2018 examination report showing Plaintiff sat comfortably in the examination chair, got up and out of the chair, and walked around the examination room without difficulty or a limp (id. (citing AR 396)).  In another example, the ALJ noted Plaintiff's allegation that he is only able to stand for ten to twenty minutes at the most (id. (citing AR 66–67)) is inconsistent with physical therapy reports showing Plaintiff was feeling a little better with a decrease in the intensity of the back pain and an improved range of motion (id. (citing AR 378, 382)).  In another example, the ALJ found Plaintiff's testimony that his back pain prohibited him from working (id. (citing AR 53, 63–64, 214, 231–37, 241)) was inconsistent with evidence such as a physical therapy report from March 29, 2019, which showed improvement with an increase in range of motion and in which Plaintiff reported feeling 90% better (id. (citing AR 582–83)).  The ALJ's reference to the medical records to identify inconsistencies in Plaintiff's testimony constitutes a specific, clear, and convincing reason supported by substantial evidence in the record that supports the ALJ's adverse credibility determination.  Lambert, 980 F.3d at 1277; Hairston, 827 Fed. App'x at 773; Carmickle, 533 F.3d at 1160; Woods I, 2022 WL 1524772, at *10 n.4.

Plaintiff argues the "inconsistencies" identified by the ALJ are taken out of context from the medical record, and that the ALJ failed to consider the longitudinal record and acknowledge Plaintiff's symptom allegations fluctuated in between each of his three surgeries.  (See ECF No. 15 at 28–31.)  Specifically, Plaintiff argues the ALJ's decision fails to note his ups and downs in between surgeries.  The Court finds this argument unpersuasive.

Contrary to Plaintiff's assertion, a review of the ALJ's decision reveals the ALJ fairly summarized the longitudinal medical records (see AR 21–23); thus, Plaintiff's argument that the ALJ's references to the record were taken out of context is unavailing.  Rather, the ALJ noted that after Plaintiff's first surgery in December 2018, Plaintiff reported significant improvement and relief for several months before reinjuring himself, reporting increased back pain once again, and ultimately undergoing a second surgery in November 2019.  Thereafter, Plaintiff again reported doing well, progressing in his recovery, and having only a few smaller flares of pain.  During the

hearing, Plaintiff reported he would soon undergo this third "and hopefully [his] last" surgery, an anterior spine fusion of two to four segments and a posterior spine fusion of one to three segments (AR 51–52 (citing AR 634)).   Meanwhile, Plaintiff appears to seek to characterize the longitudinal record as showing a largely consistent, steadily progressing condition.   However, Plaintiff's testimony fails to acknowledge any of the improvements resulting from his surgeries, physical therapy, and other treatments for his back, and instead paints with an overly-broad brush that suggests Plaintiff's pain has consistently been so extreme and debilitating that Plaintiff was precluded from most activities since the alleged onset date in December 2017.   (See, e.g., AR 65.)   The ALJ's decision thus properly pointed out Plaintiff's sweeping testimony was inconsistent with many treatment notes from the medical records with respect to the duration and frequency of Plaintiff's symptoms.   See Tommasetti, 533 F.3d at 1039–40 (finding claimant was a "vague witness" went to ordinary techniques of credibility evaluation and supported the ALJ's credibility determination).

### b.   Activities of Daily Living ("ADLs")

Another reason the ALJ identified was that Plaintiff's ADLs do not support his allegations of debilitating symptoms: "For instance, the claimant reported he can drive, is able to do whatever cooking is required and during the day, he takes short walks, watches television for about two hours, uses the computer, sends text messages, uses the telephone, and reads."   (AR 25 (citing AR 396)).   The Court additionally notes Plaintiff cares for his two children, over whom he has sole custody.   Accordingly, the ALJ concluded Plaintiff's allegations as to the intensity and limiting effects of his impairments are inconsistent with his ADLs.   This finding constitutes a clear and convincing reason to support the ALJ's credibility determination.   Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012), superseded by regulation on other grounds; Valentine, 574 F.3d at 693.

Plaintiff argues his activities of daily living ("ADLs") do not provide a basis for the ALJ to discount his testimony because the ALJ failed to establish the ADLs contradicted Plaintiff's other testimony, or that Plaintiff's ADLs are transferable to a work setting.   (ECF No. 15 at 31–32.)   Plaintiff's argument that the ALJ did not identify any specific inconsistent allegations of

limitations, however, is unavailing.  As noted, "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Ghanim, 763 F.3d at 1165.  In order to reach such a conclusion, the Ninth Circuit generally requires the ALJ to describe the daily activities, note whether the claimant performs them alone or with assistance, and evaluate whether the nature of each activity "comprise[s] a 'substantial' portion of [the claimant's] day, or [is] 'transferrable' to a work environment."  Id.  However, even where a claimant's activities "suggest some difficulty functioning, they may [still] be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  Molina, 674 F.3d at 1112–13 (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine, 574 F.3d at 693).

In Valentine v. Astrue, for example, the ALJ determined the claimant "demonstrated better abilities than he acknowledged in his written statements and testimony" and that his "non-work activities … are inconsistent with the degree of impairment he alleges."  Valentine, 574 F.3d at 693.  The ALJ further remarked on the claimant's ADLs, but acknowledged these activities did not suggest that the claimant could return to his old job.  Id.  Instead, the ALJ indicated she thought the ADLs suggested the claimant's later claims about the severity of his limitations were exaggerated.  Id.  The Ninth Circuit found the ALJ provided clear and convincing reasons to reject the claimant's subjective complaint testimony because she identified evidence that directly contradicted the claimant's claims that his PTSD was so severe that he was unable to work, including contentions about how debilitating his fatigue was.  Id.  Thus, as demonstrated, evidence of ADLs need not directly contradict or disprove a specific alleged limitation, but may cut against the ultimate claim of disability based on the allegation that impairments are "totally debilitating."

Relatedly, Ninth Circuit caselaw demonstrates that ADLs may be grounds for discounting allegations that an impairment is so severe it is totally debilitating, even if they are not directly transferrable to a work setting.  See Molina, 674 F.3d at 1112–13 (noting "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferrable to a work setting … Even where those activities suggest some

difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (internal citations omitted). Thus, Plaintiff's argument is unavailing.

c.     **Inconsistencies with the Medical Opinion Evidence**

In addition, the Court notes the ALJ determined Plaintiff's allegations and contentions regarding the nature and severity of his impairment-related symptoms were only partially reliable because they were inconsistent with the medical opinions of Drs. Van Kirk, Khong, and Arnold, "all of whom found [Plaintiff] more capable than even the above residual functional capacity finding." (AR 25.) As the Court has noted, a finding that a claimant's symptom allegations are inconsistent with the medical opinions constitutes a clear and convincing reason for rejecting the claimant's subjective testimony. Hairston, 827 Fed. App'x at 773; Carmickle, 533 F.3d at 1160; Woods I, 2022 WL 1524772, at *10 n.4.

Plaintiff argues the ALJ improperly rejected his symptom testimony on the basis that it was inconsistent with the medical opinions of Drs. Van Kirk, Khong, and Arnold because the ALJ ultimately found these opinions to be unpersuasive. (ECF No. 15 at 32–33.) Though Plaintiff's argument is well-taken, his statement is not entirely accurate. While the ALJ does state she did not find the opinions of Drs. Van Kirk, Khong, and Arnold persuasive because they are not fully consistent with the medical and other evidence, and ultimately reached an RFC determination inclusive of more limitations than those doctors recommended, the ALJ nevertheless acknowledges that these doctors provided legitimate support for their opinions. Dr. Van Kirk's opinion, for example, was supported by his examination findings, which the ALJ does not reject, but merely accords less weight to on the basis that the examination constitutes only a single encounter with Plaintiff. (See AR 24–25.) Similarly, the ALJ found Drs. Khong and Arnold properly supported their opinions with notes from the medical record; however, less weight was accorded here because the ALJ acknowledged that Drs. Khong and Arnold's opinions were issued before Plaintiff's second surgical procedure, and therefore they did not have the opportunity to consider these additional medical records. (AR 25.) Thus, it appears that, to the limited extent Plaintiff's testimony is inconsistent with certain findings of Drs. Van Kirk, Khong,

and Arnold that were properly based upon the medical record and objective examinations, the ALJ's finding of inconsistent testimony is proper.  Furthermore, even if the ALJ erred as to this point, the Court finds she has presented other specific and legitimate reasons for discounting Plaintiff's testimony; thus, any error here is harmless.[12]  Stout, 454 F.3d at 1055–56; Tommasetti, 533 F.3d at 1038 (error is harmless "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."); see also Molina, 674 F.3d at 1115 (collecting cases demonstrating harmless error).

In sum, the ALJ has sufficiently identified multiple clear and convincing reasons in support of her determination that Plaintiff's treatment is inconsistent with the severity of his alleged symptoms.  Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); S.S.R. 16-3p at *10. While Plaintiff may seek to suggest an alternative interpretation of the evidence, this is not sufficient to establish reversible error.  See Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted).  Accordingly, the Court finds the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony.

## B.      Evaluation of the Medical Opinion Evidence

Plaintiff argues the ALJ improperly discounted the medical opinion of his treating primary care physician, Dr. Terrence Arikawa, DO.  (ECF No. 15 at 35–39.)  The Court notes Plaintiff does not challenge the ALJ's evaluation of the medical opinion evidence of any of the other physicians of record.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929.

### 1.      Legal Standard

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence.  See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including

---

[12] The Court additionally notes Plaintiff appears to suggest the records relied upon by the ALJ were cherry-picked. However, the Court finds this argument to be unavailing.  As previously discussed, the ALJ presented an accurate summary of the longitudinal record and cited to examples contained therein.  The Court does not find the ALJ's reasoning misconstrues the record in any manner.

controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017). As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the opinion of a treating physician. Woods v. Kijakazi (Woods II), 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be." 20 C.F.R. § 404.1520c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in her decision how persuasive she finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [she] considered the [other

remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. § 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).  Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how she considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

2.   Analysis

Dr. Arikawa completed a fill-in-the-blank treating source statement as to Plaintiff's physical conditions on September 17, 2020.  (AR 749–52.)  Dr. Arikawa checked various boxes to opine that Plaintiff is able to lift and carry less than ten pounds occasionally and frequently; stand and walk less than two hours, and sit for less than two hours total in an eight-hour workday; needs the freedom to lie down or rest periodically throughout the day; should never bend, stoop, twist, crouch, or climb stairs or ladders; is mildly limited in the ability to finger and feel; is totally precluded from reaching, handling, pushing and pulling; needs to avoid concentrated exposure to extreme cold and extreme heat; needs to avoid moderate exposure to humidity, noise, fumes, odors, dusts, and gases; and needs to avoid all exposure to wetness, hazards, machinery, and heights.  Dr. Arikawa further opined Plaintiff suffers from frequent, debilitating fatigue, which would interfere with his ability to work on a sustained basis; that he would need to take more than ten unscheduled breaks to rest during an eight-hour workday; and that Plaintiff's impairment/combination of impairments would reasonably preclude Plaintiff from sustaining work for eight hours a day, five days a week.  Given the option to write in and identify the clinical findings in support of his opinion, Dr. Arikawa notes he observed a sudden decline in Plaintiff's back strength and mobility, an acute/chronic lower back pain from December 18, 2019 through September 17, 2020 (the date of the medical opinion), the progression of lower back pain, loss of strength, endurance, and range of motion, and "there are CT scans/MRI to confirm Dx."  (AR 752.)  The treating source statement does not, however, further identify the medical

1    records or CT scans/MRI to which Dr. Arikawa refers.

2          In evaluating the medical opinion evidence, the ALJ did not find the opinion of Dr.

3    Arikawa to be persuasive because:

4          it is not fully consistent with the evidence.   For example, it is
           inconsistent with a physical therapy report from March 29, 2019
5          showing improvement with an increase in range of motion and that
           the claimant reported feeling 90% better (Exhibit 5F, pp. 95–96).
6          Furthermore, the need to avoid even moderate exposure to fumes,
           odors, dusts, and gases (see Exhibit 11F, p. 3) is inconsistent with
7          and unwarranted especially in light of the lack of a respiratory
           impairment.     Dr. Arikawa does not provide much objective
8          evidence or clinical findings to support his opinion. He does state,
           "There are CT scans/MRI to confirm diagnosis" (see Exhibit 11F,
9          p. 4), but he does not provide any specific information regarding
           these studies (e.g. date, time, etc.).   To support his assessment, Dr.
10         Arikawa references a sudden decline in back strength and mobility
           from December 18, 2019 to the present, but that would not support
11         these limitations from the December 6, 2017 alleged onset date.   In
           addition, as of the date of this decision, 12 months have not passed
12         from December 18, 2019 and as indicated above, the claimant has
           surgery scheduled for November 2020.   After a prior surgery, it was
13         noted that the claimant was doing quite well and happy with his
           progress (Exhibit 4F, p. 74).
14

15   (AR 24 (emphasis in original).)   In consideration of the foregoing, the Court finds the ALJ's

16   evaluation of Dr. Arikawa's opinion is supported by and consistent with the record.

17         As noted herein, the ALJ found Dr. Arikawa's check-the-box opinion was not supported

18   by much objective evidence or clinical findings; moreover, Dr Arikawa fails to identify which CT

19   scans and/or MRIs he is referencing in his opinion, making it extremely difficult for the ALJ or

20   this Court to verify whether evidence in the medical record is supportive of Dr. Arikawa's

21   opinion. Ford, 950 F.3d at 1155 (holding the ALJ may permissibly reject check-off reports that

22   do not contain any explanation of the bases of their conclusions); see also Flowers v. Colvin, No.

23   3:16-CV-05025 JRC, 2016 WL 4120048, at *3 (W.D. Wash. Aug. 3, 2016) (ALJ may discount an

24   unexplained check-the-box form opinion that is unsupported or inconsistent with the treatment

25   records from that medical provider).   Furthermore, the ALJ's finding that Dr. Arikawa's opinion

26   fails to tie Plaintiff's condition to the alleged date of onset of disability, and instead indicates a

27   new decline beginning in December 18, 2019, is well-taken.   The Court, therefore, finds the ALJ

28   has adequately explained how she considered the supportability factor relative to Dr. Arikawa's

1    medical opinion.  See Martinez V., 2021 WL 1947238, at *3.

2              Plaintiff disputes this finding, arguing Dr. Arikawa's opinion was supported by his

3    treatment notes in the longitudinal record and Dr. Metz's notes from Plaintiff's supplemental

4    records.  (See ECF No. 15 at 35–39.)  This argument is unavailing.  The only medical records

5    from Dr. Metz's office pertain to Plaintiff's pre-op and post-op appointments for his November 6,

6    2020 surgery.  (See AR 33–47.)  Nothing in Dr. Metz's notes indicates he endorses Dr. Arikawa's

7    opinion with respect to the limitations identified in Dr. Arikawa's medical statement, or has even

8    reviewed Plaintiff's prior records.   Nor do these supplemental records support Plaintiff's

9    symptom allegations; at most, Dr. Metz appears to record the symptoms Plaintiff reported to him

10   (see AR 33), but there is no indication Dr. Metz performed independent examinations that

11   corroborate Plaintiff's reported symptomology.    And, while Dr. Metz notes worsening

12   degenerative changes, he does not indicate the date from which the decline occurred.  As to

13   records from Dr. Arikawa, Plaintiff argues there exist over 170 pages of relevant records that

14   support Dr. Arikawa's opinion, but he does not discuss or identify any specific notes.  Finally,

15   Plaintiff does not in any substantive way address the ALJ's finding that Dr. Arikawa's opinion

16   appears to apply only to a decline of condition occurring in December 18, 2019, thus failing to

17   meet the SSA's requirement that the claimant's impairment has lasted or can be expected to last

18   for a continuous period of not less than 12-months; nor does Plaintiff cite to any legal authority in

19   support of his position.  As such, Plaintiff's argument is unavailing.

20             As to the consistency factor, the ALJ identified portions of the record that Dr. Arikawa's

21   opinion was inconsistent with, such as the physical therapy report showing improvement and

22   Plaintiff feeling "90% better," and reports that Plaintiff was doing much better after his prior

23   surgeries.  Thus, the ALJ has adequately explained how she considered the consistency factor

24   relative to Dr. Arikawa's medical opinion.  Martinez V., 2021 WL 1947238, at *3.  Plaintiff again

25   asserts the argument that the ALJ failed to consider that Plaintiff's lumbar spine symptoms varied

26   over time and progressively worsened, thus necessitating each surgery.   This argument is

27   unavailing for the same reasons previously discussed.  Finally, Plaintiff takes issue with the

28   ALJ's finding that Dr. Arikawa's opinion was inconsistent with the record to the extent that Dr.

Arikawa opined Plaintiff would need to avoid exposure to fumes, odors, dusts, and gases.  In support of his argument, Plaintiff points several treatment notes in which Plaintiff was diagnosed with "acute allergic rhinitis" in August 2017, and notes he was prescribed allergy medications, and was referred to an immunologist for further care.  This argument is unavailing.  As the ALJ noted, Plaintiff was not deemed to have a respiratory impairment.  Indeed, Plaintiff did not indicate any respiratory issues in his disability application.  Further, Plaintiff has not challenged the ALJ's determination that Plaintiff's impairments include only degenerative disc disease, sleep apnea, and insomnia, and has waived such challenge.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929.  Absent any finding of a respiratory impairment, there is no basis to opine the RFC should include the limitations set forth by Dr. Arikawa.

In sum, the ALJ's analysis addressed the persuasiveness of the medical opinions— including that of Dr. Arikawa—as well as the prior administrative medical findings, and the cumulative medical and non-medical evidence, and that analysis is supported by substantial evidence in the record.  Ford, 950 F.3d at 1154; Martinez V., 2021 WL 1947238, at *3. Accordingly, the Court finds the ALJ did not err in her evaluation of the medical opinion evidence.

### C.    Appeal Council's Review of Plaintiff's New Evidence

1.    Legal Standard for New Evidence Before the Appeals Council

The Ninth Circuit has "routinely considered evidence submitted for the first time to the Appeals Council to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence."  Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012) ("we hold that when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."); see also Lingenfelter, 504 F.3d at 1030 n.2 (noting that when the Appeals Council considers new evidence in denying a claimant's request for review, the reviewing court considers both the ALJ's decision and the additional evidence submitted to the Council).

The Regulations govern when the Appeals Council is obligated to review additional evidence submitted after the ALJ issues a decision.  See 20 C.F.R. §§ 404.970 (applicable to applications for SSDI benefits), 416.1470 (applicable to applications for SSI benefits) (eff. Jan. 17, 2017).  Pursuant to the regulations in effect at the time of Plaintiff's appeal, the Appeals Council "will review a case if … the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5); see also Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1233 (9th Cir. 2011).

It is the claimant's burden to establish the evidence should have been considered by the Appeals Council under the Regulations.  Hawks v. Berryhill, No. 1:17CV1021, 2018 WL 6728037 at *4 (M.D.N.C. Dec. 21, 2018) (noting under the amended regulations, "a claimant's burden to have new evidence considered for the first time at the Appeals Council level" includes "a requirement to show a reasonable probability of a different outcome").  As noted, this burden includes establishing the evidence is new, material, and there is a reasonable probability that the additional evidence would change the outcome of the decision, it relates to the period on or before the date of the hearing decision, and good cause exists for the late submission.  20 C.F.R. §§ 416.1470(a)–(b).  To be material, "the new evidence must bear directly and substantially on the matter in dispute."  The claimant must also "demonstrate that there is a reasonable possibility that the new evidence would have changed the outcome" of the disability determination.  Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001) (citation and quotation marks omitted).

When the Appeals Council fails to "consider" additional evidence that satisfies the requirements of §§ 404.970(b) or 416.1470(b), a remand for further administrative proceedings is appropriate.

2.      The Appeals Council Decision

Here, Plaintiff submitted six pages of medical records dated October 26, 2020, and nine pages of medical records for the period of November 6–24, 2020, after the ALJ issued her October 30, 2020 decision.  (AR 33–47.)  The records consist of pre-op and post-op notes related

to Plaintiff's November 6, 2020 surgery.  The Appeals Council considered these records and Plaintiff's arguments and determined they did not provide a basis for changing the ALJ's decision because the records did not relate to the period at issue and therefore would not affect the decision about whether Plaintiff was disabled beginning on or before November 4, 2020.  (AR 1–6.) Instead, the Appeals Council directed Plaintiff to file a new claim for disability insurance benefits if he wished the SSA to consider whether he was disabled after November 4, 2020.

> 3.  Analysis

Plaintiff argues there is a reasonable possibility that consideration of his supplemental medical records would have changed the outcome of his disability claim because the records establish a worsening progression of lumbar pain, necessitating further surgery.  Thus, Plaintiff argues the Appeals Council erred in finding that "the additional evidence does not relate to the period at issue" and "does not show a reasonable probability that it would change the outcome of the decision."  (ECF No. 15 at 39–40.)

Plaintiff's continuing pain argument is essentially the same as his longitudinal records argument, which this Court has addressed and rejected.  For the same reasons previously discussed, the Court finds this argument is unavailing.  Namely, in attempting to portray the longitudinal records as depicting continuous, worsening pain, Plaintiff fails to acknowledge voluminous records documenting the significant recovery he experienced after each of the first two surgeries through the use of medications and engaging in physical therapy and other treatments.  Plaintiff additionally neglects to acknowledge that each of his lapses in recovery, leading to an eventual decision to pursue another surgery, appear to follow an incident in which Plaintiff has reinjured himself, such as from falling or attempting to lift heavy weights.  Further, the supplemental records—Dr. Metz's pre-op and post-op treatment notes pertaining to Plaintiff's most recent surgery—were previously addressed by the Court in its discussion of the ALJ's evaluation of the medical opinion evidence.  For the reasons previously discussed, Dr. Metz's treatment notes do not support Plaintiff's argument that the outcome of the ALJ's decision would be changed.  Finally, Plaintiff relies on the treatment notes and medical opinion of Dr. Arikawa to bolster the weight of Dr. Metz's records and support his argument that the Appeals Council erred.

1    However, the Court has determined the ALJ properly discounted Dr. Arikawa's opinion;

2    therefore, Plaintiff's reliance on such records in support of the instant argument is unavailing.

3    Finally, the Court finds Plaintiff is merely rehashing his prior arguments that the ALJ improperly

4    discounted Dr. Arikawa's opinion. Accordingly, Plaintiff's argument on this basis fails. See

5    Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (rejecting a step five

6    argument that "simply restates" arguments about medical evidence and testimony); Hairston, 827

7    Fed. App'x at 773 (summarily rejecting claimant's arguments that RFC and step-five findings

8    were unsupported by substantial evidence as "derivative of her preceding arguments addressed

9    and rejected above."); see also Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988)

10   (acknowledging there is no requirement that testimony for which the ALJ has provided specific

11   and legitimate reasons to discount be included in the hypothetical given the VE).

## VI.

### CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.    Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF
      No. 15) is DENIED; and

2.    The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant
      Commissioner of Social Security and against Plaintiff Anthony Manuel Angelo
      Silva and close this case.

IT IS SO ORDERED.

Dated:   __January 19, 2023__

_____

UNITED STATES MAGISTRATE JUDGE